UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Ramel General

   v.             Case No. 24-cv-248-SE
                  Opinion No. 2025 DNH 114

Warden, FCI Berlin

**O R D E R**

Ramel General, an inmate at the Federal Correctional Facility in Berlin, New Hampshire, petitions the court for a writ of habeas corpus under 28 U.S.C. § 2241. He asserts that he is entitled to a credit toward his federal sentence for time he served in state prison pursuant to a Connecticut state court sentence. Alternatively, he contends that the Bureau of Prisons abused its discretion when it denied his request to designate his state facility retroactively as a location for serving his federal sentence *nunc pro tunc*. The warden of FCI Berlin moves for summary judgment.

Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "carries with it the potential to affect the outcome of the suit." French v. Merrill, 15 F.4th 116, 123 (1st Cir. 2021) (quotation omitted). A material fact is in genuine dispute if "a reasonable jury could resolve the point in the favor of the non-moving party." Id. The court construes the record in the light most favorable to the nonmoving party. Benson v. Wal-Mart Stores East, L.P., 14 F.4th 13, 17 (1st Cir. 2021). In considering a

motion for summary judgment, the court may review materials cited in the motion and other materials in the record. Fed. R. Civ. P. 56(c)(1)(3).

Background

On February 26, 2019, General was arrested by federal authorities for a federal drug offense. Shortly thereafter, on March 1, 2019, he was released on bond. On May 27, 2019, Connecticut authorities arrested General on a variety of unrelated state charges. The next day, General was transferred to the custody of the Connecticut Department of Corrections, where he remained for about a week.

On June 4, 2019, the United States Marshal Service removed General from state prison pursuant to a writ of habeas corpus ad prosequendum issued in a federal prosecution in the United States District Court for the District of Connecticut. Over a year later, on August 25, 2020, the federal court sentenced General to 120 months in prison. The judgment in the federal case did not state whether General's federal sentence would run concurrently or consecutively with any other sentence. Later that day, General was returned to the custody of the Connecticut Department of Corrections.

On November 13, 2020, the Connecticut Superior Court sentenced General to eight years in prison, which was "suspended after 3 years to serve, 3 years probation," and which was "to run concurrent to the federal sentence. Credit from 5/27/19 to present." Doc. no. 6-8 at 2. On March 22, 2022, General completed his state sentence. According to the BOP's sentence computation, General began his federal sentence that same day, on March 22, 2022. The BOP has also computed that General's expected release date is October 21, 2030.

On June 22, 2023, General, who was at this point at FCI Berlin, wrote to the BOP to ask that his records reflect that his "state sentence is to run concurrent with [his] federal sentence" and that his "federal sentence computation began on May 27, 2019." Doc no. 6-11 at 2. In response, the BOP contacted the federal judge that had sentenced General and asked her whether she agreed to grant a retroactive designation in General's federal case, such that General would be credited with time spent serving his state sentence toward his federal sentence. Doc. no. 6-12. The court replied with a docket entry entitled "Articulation of Judgment," which explained that the court had "made clear at sentencing that it did not intend for the federal sentence to run concurrently with any forthcoming state sentence, (see [1449] Sentencing Transcript 16:22-19:6)." Doc. no. 6-13 at 2. The BOP's Designation and Computation Center then reviewed General's case under the factors set forth in 18 U.S.C. § 3621(b) and determined that it would not retroactively designate General's time in state prison as time counting toward his federal sentence. The BOP informed General of this decision.

After exhausting his administrative remedies, General filed in this court a petition for a writ of habeas corpus under § 2241. He claims in his petition that he is entitled to credit toward his federal sentence for the time period between May 27, 2019, and March 22, 2022.

Discussion

General's petition is based on two theories. First, he argues that his federal sentence commenced on May 27, 2019, the date on which he was arrested by state authorities and on which the Connecticut Superior Court began crediting his time served for the purpose of his state court sentence. In the alternative, he argues that the BOP erred when it denied his request, under the provisions of § 3621(b), to receive credit for that time under a retroactive concurrent *nunc*

3

*pro tunc* designation. The warden argues in his summary judgment motion that both of General's theories fail as a matter of law. For the reasons explained below, the court agrees with the warden.

I.   Computation of Sentence

The Bureau of Prisons is responsible for computing federal sentences. U.S. v. Wilson, 503 U.S. 329, 331 (1992). To do this, "[t]he BOP must decide (1) when the sentence commences and (2) to what extent the defendant in question may receive credit for any time already spent in custody." Lewis v. Warden, Federal Correctional Institution, Berlin, New Hampshire, Case No. 16-cv-188-LM, 2017 WL 2199018, at *2 (D.N.H. Apr. 27, 2017) (quotations omitted); see 18 U.S.C. § 3585.

General argues that the BOP erred in determining the date on which his federal sentence began. He also argues that even if the BOP correctly determined his sentencing start date, it should nevertheless give him credit for the time he spent in state custody serving his state sentence.

A.   Primary Jurisdiction Doctrine

Under § 3585(a), "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." The term "'custody' in § 3585(a) [means] 'legal custody,' meaning that the federal government has both physical custody of the defendant and the primary jurisdiction necessary to enforce the federal sentence." Johnson v. Gill, 883 F.3d 756, 764 (9th Cir. 2018).

4

"Under the doctrine of primary jurisdiction, '[t]he first sovereign to take physical custody of a defendant retains primary jurisdiction until releasing that jurisdiction.'" Fields v. Tatum, Case No. 15-cv-374-LM, 2017 WL 4232521, at *3 (D.N.H. June 26, 2017) rep. and rec. adopted sub nom. Fields v. FCI Berlin, Warden, 2017 WL 4233010 (D.N.H. Sept. 20, 2017) (quoting Elwell v. Fisher, 716 F.3d 477, 481 (8th Cir. 2013)). "It retains that jurisdiction until it takes a specific act to relinquish it, such as release on bail, parole, or the dismissal of pending charges." Stephens v. Sabol, 539 F. Supp. 2d 489, 493 (D. Mass. 2008); Smart v. Warden, No. 13-CV-375-SM, 2014 WL 2940871, at *3 (D.N.H. June 30, 2014).

General argues that the federal government had primary jurisdiction over him because federal authorities arrested him on February 26, 2019, several months before state authorities arrested him. But the federal government relinquished its jurisdiction when it released General on bond on March 1, 2019. The State of Connecticut then gained primary jurisdiction over General when state authorities arrested him on May 27, 2019. See, e.g., Taccetta v. Fed. Bureau of Prisons, 606 F. App'x 661, 663-64 (3d Cir. 2015) ("Here, the federal government obtained primary custody of Taccetta by arresting him in January 1993, but relinquished custody by releasing him on bail. New Jersey then gained primary custody by arresting Taccetta in August 1993, and retained primary custody because he was not released on bail."). Indeed, the federal government recognized that Connecticut had jurisdiction over General when it later asked to borrow him for court proceedings through a writ of habeas corpus ad prosequendum. See, e.g., Brown v. Caraway, No. CIV.A. DKC-12-2318, 2013 WL 1702643, at *4 (D. Md. Apr. 18, 2013) ("The writ of habeas corpus ad prosequendum specifically recognizes the state's primary jurisdiction and the intention of the federal authorities to 'borrow' the defendant for court proceedings and return the defendant to state custody to complete his state sentence.").

Nor did Connecticut relinquish jurisdiction over General when it produced him to federal authorities pursuant to the writ of habeas corpus ad prosequendum. Stephens, 539 F. Supp. 2d at 493 ("The use of [a writ of habeas corpus ad prosequendum] did not signal that Florida authorities relinquished their primary jurisdiction over Stephens. To the contrary, the federal writ only 'borrows' the defendant from state custody. When the writ is used, the defendant officially remains in the jurisdiction of the sovereign from which he was borrowed . . . ."); Moorning v. Purdue, Civil Action No.: 3:14-cv-1, 2015 WL 774280, at *5 (N.D.W. Va. Feb. 24 2015). Instead, General remained in Connecticut custody until he completed his state sentence in March 2022 and was transferred to federal custody, thus beginning his federal sentence. See Jimenez v. Warden, FDIC, Fort Devens, Massachusetts, 147 F. Supp. 2d 24, 28 (D. Mass. 2001) ("[P]rimary jurisdiction over a state prisoner ends and federal custody over him commences only when the state authorities relinquish him on satisfaction or extinguishment of the state obligation.").

In his reply, General relies on United States v. Croft, 450 F.2d 1094 (6th Cir. 1971) for the proposition that the United States did not relinquish primary jurisdiction when it released him on bond after his February 2019 arrest. In Croft, the Sixth Circuit held that the federal government did not lose primary jurisdiction over the defendant after charging him with a federal offense and releasing him on bail. But Croft was decided prior to the enactment of § 3585, which now governs the BOP's computation of sentences. Further, its holding has been rejected by several courts, and applicable case law overwhelmingly holds that a sovereign with primary jurisdiction relinquishes that jurisdiction through releasing the defendant on bail. United States v. Tillisy, No. 22-30144, 2024 WL 1926510, at *1 (9th Cir. May 2, 2024); Loewe v. Cross, 589 F. App'x 788, 790 (7th Cir. 2014); Davis v. Sniezek, 403 F. App'x 738, 740 (3d Cir. 2010); Elwell, 716 F.3d at 481.

For these reasons, pursuant to the primary jurisdiction doctrine, General cannot claim that he was in legal custody of the federal government and entitled to federal time credit for the period of May 27, 2019, through March 22, 2022.

B.     Concurrent Sentences

Next, General argues that his time in state custody should be counted toward his federal sentence. "A defendant will receive credit for time served 'that has not been credited against another sentence.'" Bazzle v. Spaulding, 460 F. Supp. 3d 74, 76 (D. Mass. 2020) (quoting 18 U.S.C. § 3585(b)). "The purpose of this limitation is to prevent 'double credit' for detention time." Id. (quoting United States v. Wilson, 503 U.S. 329, 337 (1992)). Here, the Connecticut court credited to General's state sentence the time that he spent in custody between his arrest on May 27, 2019, and March 22, 2022, when he completed his sentence. Therefore, on its face, the time General spent in state custody should not be counted toward his federal sentence.

Nevertheless, General points to the state court judgment which provides that his state court sentence was "to run concurrent to the federal sentence." Doc. no. 6-8 at 2. He argues that this statement in the judgment entitles him to "Willis" credits, which refer "to a mechanism by which an individual who is serving concurrent state and federal sentences can have the time he spends in state custody also counted toward his federal sentence."[1] Yancey v. Warden, FMC Devens, 712 F. Supp. 3d 95, 101 n.6 (D. Mass. 2024); see Willis v. United States, 438 F.2d 923,

---

[1] The warden states in a footnote that General "does not appear to have exhausted his administrative remedies relating to" Willis credits because his appeal to the BOP Central Office does not reference those credits. Doc. no. 6-1 at 9 n.2. Because the warden addressed the issue on the merits, and because General is not entitled to Willis credits for the reasons explained below, the court assumes without deciding that General exhausted his administrative remedies with regard to that claim.

925 (5th Cir. 1971). Specifically, an "individual is eligible for Willis credit[s] from the BOP when: (1) his federal and state sentences are concurrent; and (2) his federal sentence is to run longer than the state sentence (not counting any credits)." Yancey, 712 F. Supp. 3d at 107 (quotations omitted). "Willis credits are only proper when the individual has begun serving one sentence before another sentence has ended." Id. at 108.

General is mistaken in his belief that he is entitled to Willis credits. The direction in the state court judgment that General's state court sentence was to run concurrent to his federal sentence "is not binding on the BOP when calculating an individual's federal sentence." Id. at 105; Mejia v. Grondolsky, No. 12-1263, 2013 WL 12476746, at *1 (1st Cir. July 1, 2013) ("Even though the state court intended its sentence to run concurrently with appellant's federal sentence, the Bureau [of Prisons] is not bound in any way by [a] state court's direction that the state and federal sentences run concurrently." (quotations omitted)). General's federal sentencing court "made clear at sentencing that it did not intend for the federal sentence to run concurrently with any forthcoming state sentence . . . ." Doc. no. 6-13 at 2. Therefore, General's federal and state sentences were not concurrent for the purpose of considering whether he is entitled to Willis credits. See, e.g., Torres v. Joyner, No. 7:22-CV-111-REW, 2023 WL 7300742, at *4 (E.D. Ky. Nov. 6, 2023) (determining that petitioner was not entitled to Willis credits because the "Northern District of Texas sentencing judge's letter in response to the BOP's inquiry regarding a *nunc pro tunc* designation clearly indicates that Torres's federal and state sentences were meant to run consecutively.").

General's federal sentence commenced on March 22, 2022, immediately after his state sentence concluded. The sentences are not concurrent for federal purposes and General is not entitled to Willis credits. See, e.g., Mills v. Quintana, 408 F. App'x 533, 536 (3d Cir. 2010)

8

(petitioner not entitled to Willis credits because "his non-federal sentence expired before his federal sentence commenced").

II.   *Nunc Pro Tunc*

General also argues that even if the BOP did not err in computing his sentence, it abused its discretion when it failed to make a *nunc pro tunc* determination that he began to serve his federal sentence on May 27, 2019.

"When a federal court imposes a sentence on a defendant who is already in state custody, the federal sentence may commence if and when the Attorney General or the Bureau agrees to designate the state facility for the service of the federal sentence." Sweat v. Grondolsky, 898 F. Supp. 2d 347, 351 (D. Mass. 2012) (quotations omitted). "That is, pursuant to 18 U.S.C. § 3621(b), time that [the petitioner] served in state custody after his federal conviction could have been credited *nunc pro tunc* (i.e., may have been deemed to have run concurrently against his federal sentence) if the BOP had chosen to designate the state institution for service of [the petitioner's] federal sentence." Tatum, 2017 WL 4232521, at *5 (cleaned up).

Section 3621(b) identified factors that the BOP must consider when responding to a request for *nunc pro tunc* designations. Those factors are:

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence—

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

9

> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

§ 3621(b). With respect to the fifth factor, the "BOP has adopted Program Statement 5160.03 which provides that a designation of a state institution for concurrent service of a federal sentence shall be made 'only when it is consistent with the intent of the federal sentencing court or the goals of the criminal justice system.'" Ysabel v. Sabol, 645 F. Supp. 2d 37, 39 (D. Mass. 2009).

A "court reviewing a BOP decision on *nunc pro tunc* designation 'cannot lightly second guess a deliberate and informed determination by the agency charged with administering federal prison policy.'" Tatum, 2017 WL 4232521, at *6 (quoting Taylor v. Sawyer, 284 F.3d 1143, 1149 (9th Cir. 2002)). Thus, "[j]udicial review of the BOP's decision to grant [or deny] a *nunc pro tunc* designation of a state facility for service of a federal sentence is limited to abuse of discretion." Ysabel, 645 F. Supp. 2d at 39.

Here, the BOP did not abuse its discretion in denying General's request. The BOP reviewed General's request and considered each of the factors set forth in § 3621(b). See doc. nos. 6-14 and 6-15. The BOP justifiably determined that the first and fifth factors carried no weight in its determination. With regard to the contemplated facility's resources, that factor "has no relevance in the context of a request for retroactive designation of a facility in which the prisoner is no longer incarcerated." Tatum, 2017 WL 4232521, at *6. As to the fifth factor, the BOP noted that there were no applicable Sentencing Commission policy statements to consider, and General does not argue otherwise. Doc. no. 6-14 at 2.

The BOP determined that the other three § 3621(b) factors were "pertinent." Doc. no. 6-15 at 2. With regard to assessing the nature and circumstances of General's offense, the second factor, the BOP determined that the federal and state charges are not related. Doc. no. 6-14 at 2. As to General's history and characteristics, the third factor, the BOP noted General's criminal history other than the federal and state charges underlying the sentencing calculation. Id. That history included the possession and sale of narcotics, violations of protective orders, and multiple charges of operating under the influence. Id. Finally, with regard to any statement by the court, the fourth factor, the BOP contacted the federal sentencing judge, who clarified that she did not intend for General's federal sentence to run concurrently with his state sentence.[2] Id.

The record demonstrates that the BOP "considered the . . . statutory factors, and it did not exceed the scope of its considerable discretion when doing so. No more was required." Tatum, 2017 WL 4232521, at *7 (recommending granting warden's motion for summary judgment and holding that BOP did not abuse its discretion when it denied petitioner's *nunc pro tunc* request when petitioner's state and federal offenses were not related and petitioner had lengthy criminal history).

---

[2] To the extent that General argues that the BOP abused its discretion when it did not consider the judgment in his state court case that directed that his state sentence should run concurrently with his federal sentence, that argument fails. As discussed, the BOP is not bound by a state court's instruction that state and federal sentences should run concurrently, and the BOP does not abuse its discretion by failing to take such an instruction into account when considering a request for *nunc pro tunc* designation. Tatum, 2017 WL 4232521, at *7 ("Because the state judge's determination was not binding on the BOP, the BOP's decision not to grant Fields's request for a *nunc pro tunc* designation to bring about the state judge's desired result was not an abuse of discretion.").

Conclusion

For the foregoing reasons, the respondent's motion for summary judgment (doc. no. 6) is granted. The clerk of court shall enter judgment and close the case.

SO ORDERED

_____
Samantha D. Elliott
United States District Judge

September 25, 2025